**XIAO JI CHEN, Petitioner,**

**v.**

**UNITED STATES DEPARTMENT OF JUSTICE, Attorney General Alberto R. Gonzales,\* Respondent.**

**Docket No. 02–4631.**

United States Court of Appeals, Second Circuit.

Decided: Jan. 6, 2006.

Opinion Revised: Dec. 7, 2006.

---

\* Attorney General Alberto R. Gonzales is substituted for his predecessor, John Ashcroft, as a respondent in this case. *See* Fed. R.App. P. 43(c)(2).

Bruno Joseph Bembi, Hempstead, NY, for Petitioner.

Donna A. Krappa, Assistant United States Attorney (Christopher J. Christie, United States Attorney for the District of New Jersey, on the brief), United States Attorney's Office for the District of New Jersey, Newark, NJ, for Respondent.

Lee Gelernt, American Civil Liberties Union Foundation, Immigrants' Rights Project, New York, N.Y. (Omar C. Jadwat, American Civil Liberties Union Foundation, Immigrants' Rights Project, New York, NY; Lucas Guttentag, Jennifer C. Chang, American Civil Liberties Union Foundation, Immigrants' Rights Project, Oakland, CA; Mary Kenney, American Immigration Law Foundation, Washington, DC, on the brief), for Amici Curiae in Support of Petitioner on Petition for Rehearing.

Bryan S. Beier, Senior Litigation Counsel, Office of Immigration Litigation, Washington, DC (Peter D. Keisler, Assistant Attorney General, United States Department of Justice, Civil Division; Jonathan F. Cohn, Deputy Assistant Attorney General; David J. Kline, Principal Deputy Director, Office of Immigration Litigation, on the brief), for Respondent on Petition for Rehearing.

Before NEWMAN, LEVAL, and CABRANES, Circuit Judges.

JOSÉ A. CABRANES, Circuit Judge.

We hereby grant the petition for rehearing of our January 6, 2006 opinion in this case, see Xiao Ji Chen v. U.S. Dep't of Justice, 434 F.3d 144 (2d Cir.2006). In the January 6 opinion, under the heading "I. Asylum," id. at 150–55, we expressed the view that "questions of law," as the term is used in section 106(a)(1)(A)(iii) of the REAL ID Act of 2005 ("REAL ID Act"), Pub.L. No. 109–13, 119 Stat. 231, 302 (codified at 8 U.S.C. § 1252(a)(2)(D))—in part

defining the scope of our jurisdiction to review removal, deportation, or exclusion orders—refers only to "a narrow category of issues regarding statutory construction." Xiao Ji Chen, 434 F.3d at 153 (internal quotation marks omitted). Upon consideration of the briefs submitted on this petition for rehearing, we conclude that the term "questions of law" is not so limited. See post at 323–32. We revise substantially our analysis in Part I of the earlier opinion as to what constitutes "questions of law" under section 106(a)(1)(A)(iii) of the REAL ID Act. We hereby vacate our prior opinion and issue this opinion in its place.**

\* \* \* \*

Petitioner Xiao Ji Chen, a native and citizen of China, seeks review of a September 25, 2002 order of the Board of Immigration Appeals ("BIA") affirming the November 17, 2000 decision of Immigration Judge ("IJ") Adam Opaciuch. In re Xiao Ji Chen, No. A 77 009 293 (B.I.A. Sept. 25, 2002), aff'g No. A 77 009 293 (Immig. Ct. N.Y. City Nov. 17, 2000) ("IJ Decision"). The IJ found petitioner's application for asylum, which was filed more than one year after her arrival in the United States, untimely. See 8 U.S.C. § 1158(a)(2)(B). He further found that she had not established either "changed circumstances which materially affect[ed][her] eligibility for asylum" or the existence of "extraordinary circumstances" that would have excused her tardiness in filing her application. Id. § 1158(a)(2)(D). Finally, the IJ

** Apart from our analysis in Part I and notes 1 and 21 below, the remainder of this opinion—in particular, the analysis set forth under the heading "II. Withholding of Removal," see post at 22–37—is not materially changed from our opinion of January 6, 2006. Accordingly, any decisions of our Court that have applied the analysis set forth in Part II of our prior opinion in this case, see Xiao Ji Chen, 434 F.3d at 155–65, are not altered or affected in any way by our amendments here. On the other hand, Part I of the prior decision has been substantially revised. Decisions of our Court that have relied on the authority of Part I of the January 6 opinion should not be considered controlling to the extent that they interpreted the phrase "questions of law" more narrowly than does this revised opinion.

denied petitioner's application for withholding of removal based on his finding that she failed to establish that were she to return to China, it was more likely than not that she would be subject to persecution or torture. *See id.* § 1231(b)(3)(A); 8 C.F.R. § 1208.16(c).

■ In her petition for review to this Court, petitioner urges that her lateness in filing her asylum application should have been excused by the IJ because she demonstrated both "changed circumstances" materially affecting her eligibility for asylum and "extraordinary circumstances" that prevented her from timely filing her application. Specifically, she asserts that there were "changed circumstances" because, shortly before her hearing before the IJ, she gave birth in the United States to her second child, who automatically, by operation of law, is a citizen of the United States. She claims also that "extraordinary circumstances" affecting the timeliness of her asylum application existed because the Immigration and Naturalization Service ("INS") "failed to have a procedure in place that would have permitted [her] to preserve a request for asylum when she was first detained by [the] INS within her first year of being in the United States."[1] Pet'r's Br. at 5. Petitioner av-

---

1. On April 27, 1999, approximately eleven months after her arrival in the United States, petitioner was detained for approximately 5–6 hours by INS officials and was ordered to appear at a removal hearing in August 1999. In support of her petition to this Court, petitioner argues that while the hearing was pending, "she was no longer able to submit an asylum application to an asylum office" because 8 C.F.R. § 208.2(b) confers "exclusive jurisdiction over asylum applications filed by an alien who has been served a . . . Form I–862, Notice to Appear" to the immigration court and that "under the operating procedures adopted by the immigration courts, [she] was barred from mailing an asylum application to the immigration court before the date of hearing." Pet'r's Br. at 20–21 (internal quotation marks omitted). However, before the IJ and the BIA, petitioner maintained that she had *orally* indicated her intent to apply for asylum when she was detained by INS officers, but she never claimed that she was *barred*—either by regulation or the agency's operating procedures, *see id.*—from submitting an asylum application before her removal hearing. Because the latter argument was not raised below before either the IJ or the BIA, that issue has not been exhausted and is deemed to have been forfeited. Accordingly, we will not consider it. *See Foster v. INS*, 376 F.3d 75, 78 (2d Cir.2004) ("To preserve a claim, we require petitioner to raise *issues* to the BIA in order to preserve them for judicial review.") (internal quotation marks and alteration omitted); *United States v. Gonzalez–Roque*, 301 F.3d 39, 47 (2d Cir. 2002) ("Although the BIA has access to the entire record, it is not obligated to search it for possibly meritorious appellate issues."); *see also* 8 U.S.C. § 1252(b)(4)(A) (providing that "the court of appeals shall decide the petition [for review] only on the administrative record on which the order of removal is based").

Petitioner also argues in her petition for review that she established "changed circumstances" excusing the untimeliness of her asylum application because "at the time of her individual hearing [before the IJ in November 2000], [petitioner] had recently given birth to her first U.S. citizen child" in April 2000. Pet'r's Br. at 5. Petitioner's counsel, however, made no such argument before the IJ, instead maintaining that petitioner had demonstrated changed "personal" circumstances because "she was detained" by the INS on April 27, 1999 and "was trying to change the venue to New York" and "ma[d]e a[n] oral statement to the INS" indicating her intent to apply for asylum. Hr'g Tr., Nov. 17, 2000, at 81; *see also* IJ Decision at 3 (rejecting petitioner's additional argument in her memorandum of law that "the government of China has recently cracked down on political dissidents"). Moreover, in her May 7, 2002 supplemental brief to the BIA, petitioner referred to the then-impending birth of her second U.S. citizen child *not* as evidence of changed circumstances excusing an untimely asylum application—nor could she have, inasmuch as the pregnancy occurred *after* petitioner already had filed her asylum application on October 13, 1999—but rather, as further evidence establishing her alleged "well-founded fear of

ers, *inter alia*, that, in finding that she did not demonstrate changed or extraordinary circumstances that would excuse her lateness in filing her asylum application, the IJ and the BIA violated her right to due process and "fail[ed] to apply the law." *Id.* at 13, 18. Finally, petitioner alleges that the IJ's determination that she is ineligible for withholding of removal under

either the Immigration and Nationality Act of 1952 ("INA"), as amended, or the United Nations Convention Against Torture ("CAT")[2] is not supported by substantial evidence.

For the reasons that follow, we dismiss the petition for lack of jurisdiction to the extent it contends that the IJ committed constitutional or legal error when he de-

persecution." Accordingly, because petitioner failed to raise any argument before the IJ or the BIA that the birth of additional children in the United States excused the untimeliness of her application, that argument has not been exhausted and will not be considered by this Court.

We note, moreover, that our recent decision in *Lin Zhong v. U.S. Dep't of Justice*, 461 F.3d 101 (2d Cir.2006), does not alter our result here. In *Lin Zhong*, we held that where the Attorney General has "waived" a petitioner's "failure to exhaust specific issues," we may *"in our discretion ...* choose to review ... arguments not previously made to the BIA." *Id.* at 116 (emphasis added). In so holding, however, we emphasized that the unexhausted issues were *"essential* to our review of the merits of [the] appeal" and that "the purposes of our issue exhaustion requirements ha[d] been served" because "[1][t]he IJ, *to whom all the matters before us were raised,* was the source of the decision that we review, [2] the full agency record is available to us, [3] no additional factfinding is necessary, and [4] the government is not concerned that the adversary proceedings below were incomplete." *Id.* at 120–21 (emphasis added).

By contrast, in this case, although the Government has failed to invoke "issue exhaustion" in its brief on appeal, it is also clear that petitioner failed to raise the arguments described above before *either* the IJ or the BIA, thus denying this Court the benefit of a full factual record and any legal or discretionary determinations that could have been made by the agency that is charged in the first instance with making such determinations under the INA. *See Theodoropoulos v. INS*, 358 F.3d 162, 171 (2d Cir.2004) ("[O]ne of the purposes served by the exhaustion requirement contained in § 1252(d) is to ensure that the [Executive Office for Immigration Review], as the agency responsible for construing and applying the immigration laws and implementing regulations, has had a full opportunity to

consider a petitioner's claims before they are submitted for review by a federal court."). Were we to consider such arguments raised for the first time in a petition for review—or even to remand to the agency for further consideration of these newly raised arguments—we would encourage parties to withhold relevant, and potentially dispositive, arguments in order to obtain review in the first instance before the Court of Appeals or to secure a delay-inducing remand well after administrative proceedings have been completed. Because nothing in *Lin Zhong* requires such a result, we decline to consider the unexhausted issues and arguments presented here. *See McKart v. United States*, 395 U.S. 185, 195, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969) (noting that "frequent and deliberate flouting of administrative processes could weaken the effectiveness of an agency by encouraging people to ignore its procedures"); *United States v. L.A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 37, 73 S.Ct. 67, 97 L.Ed. 54 (1952) ("[C]ourts should not topple over administrative decisions unless the administrative body not only has erred but has erred against objection made at the time appropriate under its practice."); *cf. INS v. Doherty*, 502 U.S. 314, 323, 112 S.Ct. 719, 116 L.Ed.2d 823 (1992) ("Motions for reopening of immigration proceedings are disfavored for the same reasons as are petitions for rehearing and motions for a new trial on the basis of newly discovered evidence. This is especially true in a deportation proceeding, where, as a general matter, every delay works to the advantage of the deportable alien who wishes merely to remain in the United States.").

2. United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, Dec. 10, 1984, S. Treaty Doc. No. 100–20 (1988), 1465 U.N.T.S. 85; *see also* 8 C.F.R. § 1208.16(c) (regulations implementing the CAT).

clined to excuse petitioner's lateness in filing her asylum application, because we conclude that the petition fails to raise a "constitutional claim[ ] or question[ ] of law" within the meaning of section 106(a)(1)(A)(iii) of the REAL ID Act. Finally, we conclude that although the IJ's decision denying petitioner's application for withholding of removal contains errors, remand nevertheless would be futile because the decision is supported by substantial evidence and it is clear that the same decision would be made in the absence of the noted deficiencies. We therefore deny that portion of the petition.

## BACKGROUND

In her removal hearing before the IJ, petitioner alleged past and future persecution based on her opposition to the Chinese family planning policy, testifying that she had been forced to undergo an abortion in October 1997 and that she would be sterilized were she to return to China. Petitioner stated that she had been required to sign a family planning agreement upon her marriage in November 1992, and that, as a factory worker, she had been designated as living in an "urban household," a status that limited her to having only one child. Five months after the birth of her first child in September 1994, petitioner alleged, the Chinese government forced her to undergo the insertion of an intrauterine device ("IUD"), after which she was required to attend quarterly examinations to confirm that she was not pregnant and that the IUD remained in place. According to petitioner, the IUD fell out at some unidentified time, and she became pregnant again in June 1997. Petitioner asserts that she then missed her next two IUD check-ups scheduled for July 1997 and October 10, 1997; during this time period, petitioner went into hiding at her mother's home in another village, despite continuing to report to work.

According to petitioner, the local birth control officials became suspicious of her and, as a result, called her mother's home and came to petitioner's workplace on October 19, 1997. Petitioner testified that she was then taken to a doctor, at which time her pregnancy was discovered, and she was forced to undergo an abortion. Rather than return approximately ten days later for sterilization, as she had been instructed, petitioner states that she made arrangements to flee to the United States, where she arrived on or about May 21, 1998. Petitioner gave birth in the United States to a second child in April 2000.

On April 27, 1999, approximately eleven months after her arrival in the United States, petitioner was detained for approximately 5–6 hours by INS officials and was ordered to appear at a removal hearing in August 1999. Petitioner filed her written application for asylum with the immigration court on October 13, 1999, nearly fifteen months after her arrival in the United States, and a merits hearing was held before the IJ on November 17, 2000.

In a decision issued at the conclusion of petitioner's hearing, the IJ rejected petitioner's application for asylum on the grounds that she had failed to file her application within one year of her arrival in the United States, as required by 8 U.S.C. § 1158(a)(2)(B), and that she had failed to establish either "changed circumstances" materially affecting her eligibility for asylum or "extraordinary circumstances" excusing her untimely filing. The IJ then concluded that, even if petitioner's asylum application was not in fact timebarred, she had failed to establish a credible case of past or future persecution entitling her either to asylum or withholding of removal under the INA or the CAT. Citing several specific examples, the IJ stated that petitioner's testimony was "in-

herently improbable, internally inconsistent, inconsistent with her written application as well as some of her supporting documents," and "contradicted by the State Department profile" of country conditions in China. IJ Decision at 9. Accordingly, the IJ concluded that petitioner had failed to satisfy her burden of proof to demonstrate eligibility for the relief requested.

On September 25, 2002, the BIA summarily affirmed, without opinion, the decision of the IJ. This petition for review followed.

## DISCUSSION

■ Where, as here, the BIA has affirmed the IJ's decision without an opinion, *see* 8 C.F.R. § 1003.1(e)(4), we review the IJ's decision directly as the final agency determination. *Ming Xia Chen v. BIA,* 435 F.3d 141, 144 (2d Cir.2006). In this case, we consider first whether we have jurisdiction to review the IJ's discretionary and factual determination, with respect to petitioner's asylum claim, that petitioner failed to establish either changed or extraordinary circumstances under 8 U.S.C. § 1158(a)(2)(D). We then evaluate petitioner's claim that the IJ improperly rejected her request for withholding of removal under both the INA and the CAT.

### I. Asylum

Title 8, Section 1158(a)(1) of the United States Code provides, in relevant part, that "[a]ny alien who is physically present in the United States or who arrives in the United States ... may apply for asylum." That statutory provision, however, is limited by § 1158(a)(2)(B), which states that § 1158(a)(1) "shall not apply to an alien unless the alien demonstrates by clear and convincing evidence that the application [for asylum] has been filed within 1 year after the date of the alien's arrival in the United States." A discretionary exception to § 1158(a)(2)(B)'s one-year bar is created by § 1158(a)(2)(D), which provides that

> [a]n application for asylum of an alien *may be considered,* notwithstanding [an alien's failure to apply for asylum within one year of the alien's arrival or the denial of a prior asylum application], if the alien demonstrates *to the satisfaction of the Attorney General* either the existence of changed circumstances which materially affect the applicant's eligibility for asylum or extraordinary circumstances relating to the delay in filing an application within the [one-year] period[.]

8 U.S.C. § 1158(a)(2)(D) (emphases added). Finally, 8 U.S.C. § 1158(a)(3) provides that "[n]o court shall have jurisdiction to review any determination of the Attorney General under [§ 1158(a)(2)]."

Based on the foregoing, prior to the enactment of the REAL ID Act on May 11, 2005, our sister circuits uniformly recognized that the courts of appeals lack jurisdiction to review an asylum application that the Attorney General—acting through the Executive Office for Immigration Review, of which the BIA and the IJs are parts—has deemed untimely and as to which the Attorney General has found neither changed nor extraordinary circumstances excusing the untimeliness. *See, e.g., Njenga v. Ashcroft,* 386 F.3d 335, 339 (1st Cir.2004); *Zaidi v. Ashcroft,* 377 F.3d 678, 681 (7th Cir.2004); *Castellano–Chacon v. INS,* 341 F.3d 533, 544 (6th Cir. 2003); *Tarrawally v. Ashcroft,* 338 F.3d 180, 185 (3d Cir.2003); *Tsevegmid v. Ashcroft,* 336 F.3d 1231, 1234–35 (10th Cir. 2003); *Fahim v. U.S. Att'y Gen.,* 278 F.3d 1216, 1217–18 (11th Cir.2002); *Hakeem v. INS,* 273 F.3d 812, 815 (9th Cir.2001); *Ismailov v. Reno,* 263 F.3d 851, 854–55 (8th Cir.2001).

■ The statutory landscape, however, changed when the REAL ID Act took effect. Among its other reforms,[3] the REAL ID Act amends section 242 of the INA to provide that "[n]othing in ... any ... provision of this Act (other than this section) which limits or eliminates judicial review, shall be construed as precluding review of *constitutional claims or questions of law* raised upon a petition for review filed with an appropriate court of appeals in accordance with this section." REAL ID Act § 106(a)(1)(A)(iii) ("Section 106") (codified at 8 U.S.C. § 1252(a)(2)(D)) (emphasis added). Thus the REAL ID Act restored the jurisdiction of courts to review even factual and discretionary decisions of the Attorney General (and his representatives) under the INA, but only to the limited extent that the petition for review of such decisions raises a constitutional claim or a question of law. *See post* at notes 7–8. Because Section 106 applies to all appeals from removal orders "issued before, on, or after the date of the enactment," May 11, 2005, that provision governs our jurisdiction to review petitioner's claims. *See* REAL ID Act § 106(b); *see also Marquez–Almanzar v. INS*, 418 F.3d 210, 215 (2d Cir.2005) (acknowledging that the REAL ID Act governs review of removal orders).

The term "constitutional claims" clearly relates to claims brought pursuant to provisions of the Constitution of the United States. By contrast, "questions of law" does not have a similarly clear meaning, and the terms of the REAL ID Act provide no guidance as to the precise content of that phrase, which is subject to countless interpretations. Construed in the broadest sense possible, "questions of law" would encompass any question related to law or having any legal dimension—that is, anything pertaining to the work in which courts are engaged, including virtually all decisions in the immigration field. For the reasons that follow, we conclude that "questions of law" could not have been intended to expand our jurisdiction in such a boundless fashion.

■ We find ambiguity in the meaning of this term. First, "questions of law" would include all constitutional claims, which by definition raise legal questions. Yet the statute refers to two separate categories: "constitutional claims or questions of law." Had Congress intended "questions of law" to be understood as *all* questions pertaining to law generally, it would have been redundant to include "constitutional claims" in Section 106. Because, as a matter of statutory construction, we do not assume Congress intended to include pure "surplusage" in its enactments, we are left with uncertainty as to the meaning of "questions of law." *See Duncan v. Walker*, 533 U.S. 167, 174, 121 S.Ct. 2120, 150 L.Ed.2d 251 (2001) ("[A] statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant[.]") (internal quotation marks omitted); *Dunn v. Commodity Futures Trading Comm'n*, 519 U.S. 465, 472, 117 S.Ct. 913, 137 L.Ed.2d 93 (1997) (recognizing the

---

3. As recognized by the Third Circuit in *Bonhometre v. Gonzales*, 414 F.3d 442 (3d Cir. 2005), a primary effect of the REAL ID Act, which is not at issue here, is to convert habeas corpus petitions filed by criminal aliens seeking review of their removal orders into petitions for review in order to "limit all aliens to one bite of the apple ... [and thereby] streamline what the Congress saw as uncertain and piecemeal review of orders of removal, divided between the district courts (habeas corpus) and the courts of appeals (petitions for review)." *Id.* at 446; *see also Marquez–Almanzar v. INS*, 418 F.3d 210, 216 (2d Cir.2005) (noting "the REAL ID Act's elimination of [28 U.S.C.] § 2241[habeas] relief as a means to review orders of removal").

"doctrine that legislative enactments should not be construed to render their provisions mere surplusage").

Second, the broadest meaning of "questions of law" would bring within our jurisdiction certain kinds of claims that the INA otherwise removes from our jurisdiction. *See, e.g.,* 8 U.S.C. § 1252(a)(2)(B)(i) (depriving courts of jurisdiction to review *"any judgment* regarding the granting of relief under section 1182(h), 1182(i), 1229b, 1229c, or 1255 of this title") (emphasis added); *id.* § 1252(a)(2)(B)(ii) (depriving courts of jurisdiction to review *"any other decision or action* of the Attorney General . . . the authority for which is specified under this subchapter to be *in the discretion* of the Attorney General") (emphases added); *id.* § 1158(a)(3) ("No court shall have jurisdiction to review *any determination* of the Attorney General under [§ 1158(a)(2)].") (emphasis added). *All* questions arising in the context of such claims, however, could not have been included in the meaning of Section 106, for this would suggest that Congress intended to repeal the jurisdiction-denying provisions of the INA *in their entirety,* rather than modify in part the *reach* of such provisions. Although it is clear that Congress has expressly limited the effect of the jurisdiction-denying provisions of the INA by restoring our jurisdiction to review "questions of law," *see* 8 U.S.C. § 1252(A)(2)(D) (applying to "any . . . provision of [the INA] (other than this section) which limits or eliminates judicial review"), nothing in the text of Section 106 suggests that Congress intended to engage effectively in a wholesale repeal of these jurisdiction-denying provisions by adopting the broadest meaning of "questions of law." As a result, we are left with uncertainty as to the meaning of the phrase.

█ Third, in light of our obligation to interpret "questions of law" in the context of the REAL ID Act as a whole, *see, e.g., United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs.,* 484 U.S. 365, 372, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988) ("[S]tatutory construction . . . is a holistic endeavor."), we are mindful of the fact that the title of the subsection containing the phrase "questions of law" is "JUDICIAL REVIEW OF *CERTAIN* LEGAL CLAIMS," REAL ID Act § 106(1)(A)(iii) (emphasis added) (codified at 8 U.S.C. § 1252(a)(2)(D)), thereby suggesting that not all legal claims are included within the phrase "questions of law." Although the title of a section does not control the meaning of the text in that section, *see INS v. St. Cyr,* 533 U.S. 289, 308–09, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001), the title may nevertheless be useful if it "shed[s] light on some ambiguous word or phrase." *Penn. Dep't of Corr. v. Yeskey,* 524 U.S. 206, 212, 118 S.Ct. 1952, 141 L.Ed.2d 215 (1998) (internal quotation marks omitted) (alteration in original). Here, the title suggests that "questions of law" does not mean *all* legal claims because the title of the section purports to cover only *certain* legal claims.

Accordingly, because the statutory text is ambiguous, we turn to the legislative history of the REAL ID Act in order to ascertain Congress's intent. *See, e.g., Watt v. Alaska,* 451 U.S. 259, 266, 101 S.Ct. 1673, 68 L.Ed.2d 80 (1981) ("The circumstances of the enactment of particular legislation may persuade a court that Congress did not intend words of common meaning to have their literal effect."); *United States v. Pabon–Cruz,* 391 F.3d 86, 98 (2d Cir.2004) (noting "the need to consult . . . legislative history" when statutory language is ambiguous).

As Committee Reports are the most authoritative sources on the meaning of legis-

lation,[4] we look to the House Conference Committee Report on the REAL ID Act. That report explains that the original draft of the statute used the phrase "pure questions of law," but that the word "pure" was later deleted because "it is superfluous." H.R.Rep. No. 109–72, at 175 (2005), U.S. Code Cong. & Admin. News 2005, at pp. 240, 300 ("Conference Report"). "The word 'pure' add[ed] no meaning" because "[t]he purpose of section 106(a)(1)(A)(iii) is to permit judicial review over those issues that were historically reviewable on habeas—constitutional and statutory-construction questions, not discretionary or factual questions." *Id.* A "question of law," the Conference Report thus concluded, "is a question regarding the construction of a statute." *Id.*

In our original opinion filed January 6, 2006 in this case, we relied on the Conference Report to conclude that the term "questions of law" refers to " 'a narrow category of issues regarding statutory construction.' " *Xiao Ji Chen,* 434 F.3d at 153 (quoting *Ramadan v. Gonzales,* 427 F.3d 1218, 1222 (9th Cir.2005), *pet. for reh'g granted* July 3, 2006). Upon reconsideration, we conclude that such questions are not limited solely to matters of "statutory construction."

The Conference Report makes clear that Congress, in enacting the REAL ID Act, sought to avoid the constitutional concerns outlined by the Supreme Court in *St. Cyr,* which stated that as a result of the Suspension Clause,[5] "*some* judicial interven-

tion in deportation cases is unquestionably required by the Constitution," *St. Cyr,* 533 U.S. at 300, 121 S.Ct. 2271 (emphasis added) (internal quotation marks omitted). In *St. Cyr,* the Supreme Court expressed doubts as to whether stripping the courts of habeas corpus jurisdiction to review deportation orders would pass constitutional muster. *See id.* (noting that "[a] construction of the amendments at issue that would entirely preclude review of a pure question of law by any court would give rise to substantial constitutional questions"). In response to the Court's doubts, Congress passed the REAL ID Act providing, according to the summary in the Conference Report, that "all aliens who are ordered removed by an immigration judge will be able to appeal to the BIA and then raise constitutional and legal challenges in the courts of appeals." H.R.Rep. No. 109–72, at 174, U.S. Code Cong. & Admin. News 2005, at p. 300. Congress intended to "provide a scheme [of judicial review] which is an 'adequate and effective' substitute for habeas corpus." *Id.* at 175, U.S. Code Cong. & Admin. News 2005, at p. 300 (quoting *Swain v. Pressley,* 430 U.S. 372, 381, 97 S.Ct. 1224, 51 L.Ed.2d 411 (1977)).

While the Conference Report refers to "statutory construction questions," *id.,* we do not interpret that reference to be exhaustive, but merely illustrative. We construe the intent of Congress's restoration under the REAL ID Act rubric of "constitutional claims or questions of law" to encompass the same types of issues that

---

4. *See generally Thornburg v. Gingles,* 478 U.S. 30, 43 n. 7, 106 S.Ct. 2752, 92 L.Ed.2d 25 (1986) ("We have repeatedly recognized that the authoritative source for legislative intent lies in the Committee Reports on the bill."); *United States v. Awadallah,* 349 F.3d 42, 54 (2d Cir.2003) ("[T]he authoritative source for finding the Legislature's intent lies in the Committee Reports on the bill, which represen[t] the considered and collective understanding of those Congressmen involved in

drafting and studying proposed legislation.") (internal quotation marks omitted) (alteration in original).

5. Article I, Section 9, Clause 2 of the Constitution provides that "[t]he Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it."

courts traditionally exercised in habeas review over Executive detentions.[6] As stated in the Conference Report, "the Supreme Court recognized that 'Congress could, without raising any constitutional questions, provide an adequate substitute through the courts of appeals.'" *Id.* (quoting *St. Cyr*, 533 U.S. at 314 n. 38, 121 S.Ct. 2271). While the Supreme Court in *St. Cyr* did not define the exact scope of constitutional protection required, it said that "at the absolute minimum, the Suspension Clause protects the writ [of habeas corpus] 'as it existed in 1789.'" *St. Cyr*, 533 U.S. at 301, 121 S.Ct. 2271 (quoting *Felker v. Turpin*, 518 U.S. 651, 663–64, 116 S.Ct. 2333, 135 L.Ed.2d 827 (1996)).

Traditionally, habeas review for Executive detention had encompassed both constitutional claims and questions of law. In *St. Cyr*, the Supreme Court noted that historically, habeas review of Executive detentions was broader than habeas review over other types of detentions resulting from judicial determinations. "While habeas review of a court judgment was limited to the issue of the sentencing court's jurisdictional competency, an attack on an executive order could raise *all issues* relating to the legality of detention." *St. Cyr*,

533 U.S. at 301 n. 14, 121 S.Ct. 2271 (emphasis added) (alteration and internal quotation marks omitted). This was because "[a]t its historical core, the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *Id.* at 301, 121 S.Ct. 2271.

As part of its historical review of the scope of habeas jurisdiction, the Supreme Court did not expressly limit its analysis to issues of "statutory construction," but instead stated that such review traditionally had "encompassed detentions based on *errors of law,* including the erroneous *application or interpretation* of statutes," *id.* at 302, 121 S.Ct. 2271 (emphases added), as well as challenges to "Executive interpretations of the immigration laws," *id.* at 307, 121 S.Ct. 2271, and determinations regarding an alien's "statutory eligibility for discretionary relief," *id.* at 314 n. 38, 121 S.Ct. 2271; *see also id.* at 307–08, 121 S.Ct. 2271. Furthermore, one of the habeas corpus cases on which *St. Cyr* relied— *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 74 S.Ct. 499, 98 L.Ed. 681 (1954)—involved the application and interpretation of a *regulation,* not a stat-

---

**6.** The reference in the Conference Report to "those issues that were historically reviewable on habeas," H.R.Rep. No. 109–72, at 175, U.S. Code Cong. & Admin. News 2005, at p. 300, relates to the origins of the REAL ID Act. In *INS v. St. Cyr*, 533 U.S. 289, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001), the Supreme Court held that neither the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") nor the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA") deny federal courts jurisdiction over habeas corpus petitions under 28 U.S.C. § 2241 brought by aliens in custody pursuant to a deportation order. *Id.* at 314, 121 S.Ct. 2271. Congress was concerned that after *St. Cyr*, "aliens who have committed serious crimes in the United States are generally able to obtain more judicial review than non-criminal

aliens." H.R.Rep. No. 109–72, at 174, U.S. Code Cong. & Admin. News 2005, at p. 300. Specifically, "under *St. Cyr*, criminal aliens [were] able to begin the judicial review process in the district court, and then appeal to the circuit court of appeals," whereas "noncriminal aliens [were able to] generally seek review only in the courts of appeals." *Id.* Section 106 was thus intended to cure "the anomalies created by *St. Cyr* and its progeny," *id.*, by depriving criminal aliens of the opportunity to bring petitions pursuant to 28 U.S.C. § 2241, but permitting the courts of appeals to review "those issues that were historically reviewable on habeas," H.R.Rep. No. 109–72, at 175, U.S. Code Cong. & Admin. News 2005, at p. 300, when we consider petitions for review of final orders of removal.

ute. *See Accardi*, 347 U.S. at 265–68, 74 S.Ct. 499.

With respect to determinations committed to the discretion of the Attorney General, the Supreme Court found that "[h]abeas courts also regularly answered *questions of law* that arose in the context of discretionary relief." *St. Cyr*, 533 U.S. at 307, 121 S.Ct. 2271 (emphasis added). At the same time, the Supreme Court emphasized in both *St. Cyr* and *Accardi* that habeas jurisdiction is not without limits. In *St. Cyr*, the Court wrote:

> [St. Cyr] does not dispute any of the *facts* that establish his deportability or the conclusion that he is deportable. Nor does he contend that he would have any right to have an unfavorable *exercise* of the Attorney General's discretion reviewed in a judicial forum. Rather, he contests the Attorney General's conclusion that, *as a matter of statutory interpretation*, he is not *eligible* for discretionary relief.

*Id.* at 298, 121 S.Ct. 2271 (emphases added); *see also id.* at 307, 121 S.Ct. 2271 (noting the traditional "distinction between eligibility for discretionary relief, on the one hand, and the favorable exercise of discretion, on the other hand"). In *Accardi*, the Court emphasized that it was not "reviewing and reversing the *manner* in which discretion was exercised," stating that any such review would have required "discussing the evidence in the record supporting or undermining the alien's claim to discretionary relief." *Accardi*, 347 U.S. at 268, 74 S.Ct. 499. Rather, the applicant there raised a reviewable claim because he had challenged the BIA's "alleged *failure to exercise* its own discretion, contrary to existing valid regulations." *Id.* (emphasis added).

In another habeas corpus case on which *St. Cyr* relied, *United States ex rel. Hintopoulos v. Shaughnessy*, 353 U.S. 72, 77 S.Ct. 618, 1 L.Ed.2d 652 (1957), the BIA denied petitioners' request for relief under the Immigration Act of 1917 as a matter of administrative discretion, but also said "[i]t is crystal clear that Congress intended to greatly restrict the granting of suspension of deportation by the change of phraseology which was used in Section 244(a) of the Immigration and Nationality Act [of 1952] as well as the Congressional comment at the time this provision was enacted." *Id.* at 76, 77 S.Ct. 618 (alteration in original). The Supreme Court, upon habeas review, considered the petitioners' argument that the BIA *"abused its discretion* in denying their application for suspension of deportation" and *"applied an improper standard* when exercising its discretion" by taking into account the congressional policy underlying a "concededly inapplicable" statute. *Id.* at 78, 77 S.Ct. 618 (emphases added). Because the petition for review raised questions of law, *i.e.*, abuse of discretion and an argument about the standard of law applied by the BIA in its exercise of discretion, the Supreme Court exercised jurisdiction over the petition, notwithstanding that the decision being challenged was one within the Attorney General's discretion. Having exercised jurisdiction, the Court rejected the claim because "the reasons relied on by the Hearing Office and the Board ... were neither capricious nor arbitrary" and "we cannot say that it was improper or arbitrary for the Board to be influenced, in exercising that discretion, by its views as to congressional policy." *Id.* at 77–78, 77 S.Ct. 618.

In deciding this case, we need not determine the precise outer limits of the term "questions of law" under the REAL ID Act, nor need we define the full extent of "those issues that were historically reviewable on habeas," H.R.Rep. No. 109–72, at 175, U.S. Code Cong. & Admin. News

2005, at p. 300, or what the Suspension Clause itself requires on direct, non-habeas review of a removal order, *see St. Cyr*, 533 U.S. at 301 n. 13, 121 S.Ct. 2271. Rather, it is enough for us to hold simply that, although the REAL ID Act restores our jurisdiction to review "constitutional claims or questions of law," 8 U.S.C. § 1252(a)(2)(D), we remain deprived of jurisdiction to review decisions under the INA when the petition for review essentially disputes the correctness of an IJ's fact-finding or the wisdom of his exercise of discretion and raises neither a constitutional claim nor a question of law. To determine whether a reviewing court has jurisdiction under Section 106 to consider a petition for review, especially one challenging the agency's fact-finding or its exercise of discretion, the court would need to study the arguments asserted. The court would need to determine, regardless of the rhetoric employed in the petition, whether it merely quarrels over the correctness of the factual findings or justification for the discretionary choices, in which case the court would lack jurisdiction, or whether it instead raises a "constitutional claim" or "question of law," in which case the court could exercise jurisdiction to review those particular issues.[7] Such an issue would arise for example in fact-finding which is flawed by an error of law, such as might arise where the IJ states that his decision was based on petitioner's failure to testify to some pertinent fact when the record of the hearing reveals unambiguously that the petitioner *did* testify to that fact. *Cf. Tian–Yong Chen v. INS*, 359 F.3d 121, 127 (2d Cir.2004) (remanding in non-REAL ID Act case where IJ based a denial of asylum on the fact that "Chen had *not* testified to being beaten," but the record of the hearing revealed that "Chen specifically stated that the police 'used their hands to beat [him]' "). Such an issue would also arise where a discretionary decision is argued to be an abuse of discretion because it was made without rational justification or based on a legally erroneous standard. *See Hintopoulos*, 353 U.S. at 76–78, 77 S.Ct. 618. But when analysis of the arguments raised by the

7. We note that in cases where a reviewing court exercises jurisdiction pursuant to Section 106 of the REAL ID Act, the court is permitted to review only the "constitutional claims or questions of law raised upon [the] petition for review," 8 U.S.C. § 1252(a)(2)(D). *See* H.R.Rep. No. 109–72, at 175, U.S. Code Cong. & Admin. News 2005, at p. 300 ("When a court is presented with a mixed question of law and fact, the court should analyze it to the extent there are legal elements, *but should not review any factual elements.")* (emphasis added). Except in cases where the IJ's factual findings are themselves based on constitutional or legal error—thus raising "constitutional claims or questions of law"—where a reviewing court exercises jurisdiction pursuant to Section 106, it does not review the factual findings made by the IJ. *See Joaquin–Porras v. Gonzales*, 435 F.3d 172, 178–80 (2d Cir.2006) (exercising jurisdiction to review non-discretionary calculation of "1 year" deadline under 8 U.S.C. § 1158(a)(2)(B) and 8 C.F.R. § 208.4(a)(2)(ii), but not whether the petitioner had established "changed" or "extraordinary" circumstances under § 1158(a)(2)(D), which was based on "the facts and the circumstances as presented in this case") (internal quotation marks omitted); *cf. Mahler v. Eby*, 264 U.S. 32, 42–46, 44 S.Ct. 283, 68 L.Ed. 549 (1924) (reviewing on habeas whether the *absence* of an explicit factual finding that the petitioners were "undesirable" invalidated the warrants of deportation). Likewise, where the determination at issue involves a discretionary decision by an IJ or the BIA, we do not review the *"manner* in which discretion was exercised," *St. Cyr*, 533 U.S. at 314 n. 38, 121 S.Ct. 2271 (emphasis added); *Accardi*, 347 U.S. at 268, 74 S.Ct. 499, except to the extent that the manner in which discretion was exercised raises a constitutional claim or question of law, *see St. Cyr*, 533 U.S. at 307, 121 S.Ct. 2271 ("Habeas courts also regularly answered questions of law that arose in the context of discretionary relief.").

petition for judicial review reveals that they do not in fact raise any reviewable issues, the petitioner cannot overcome this deficiency and secure review by using the rhetoric of a "constitutional claim" or "question of law" to disguise what is essentially a quarrel about fact-finding or the exercise of discretion.[8]

■ Petitioner here argues that the IJ erred in either his fact-finding or in his exercise of discretion in rejecting petitioner's contention that changed or extraordinary circumstances excused the untimeliness of her petition for asylum. In her effort to establish such changed or extraordinary circumstances, petitioner argued changed circumstances because the government of China had recently cracked down on political dissidents and extraordinary circumstances because petitioner made an oral request to file for asylum when she was detained by the INS. The IJ rejected these contentions, finding that "nothing had changed" in China's family planning policies that would have affected her eligibility for asylum, and that she had "ample opportunity" to file her asylum application within one year as required, notwithstanding her "very brief" detention in April 1999. Petitioner's challenge to the IJ's rulings are just the kind of quarrels with fact-finding determinations and with exercises of discretion that courts continue

to have no jurisdiction to review, notwithstanding the REAL ID Act's restoration of jurisdiction over constitutional claims and questions of law.

In an effort to come within the restored jurisdiction for constitutional claims and questions of law, petitioner asserts that the IJ "fail[ed] to apply the law," and argues that a claim of failure to apply the law raises a question of law, if not also a constitutional claim of violation of due process. A petitioner cannot overcome the lack of jurisdiction to review by invocation of such rhetoric.

To determine whether the petition for review in fact raises a constitutional claim or question of law, we examine the precise arguments of the petition. The conclusory assertion that the IJ and the BIA "fail[ed] to apply the law" presents neither a constitutional claim nor a question of law within the meaning of the REAL ID Act. Indeed, were we to exercise jurisdiction based on a petitioner's talismanic statement that an IJ "fail[ed] to apply the law," without more, a petitioner would have no need to raise a specific "constitutional claim[ ] or question[ ] of law" to obtain the court's jurisdiction. Although, as we have pointed out, a "question of law" may be found in some instances in petitions to review an IJ's discretionary denial of relief, a petitioner's

---

8. In so holding, we emphasize the particular role played by Section 106 of the REAL ID Act—namely, to *restore* some of the jurisdiction that is otherwise *denied* by another provision of the INA. *See* 8 U.S.C. § 1252(a)(2)(D) ("Nothing in subparagraph (B) or (C), or in any other provision of this chapter (other than this section) *which limits or eliminates judicial review*, shall be construed as precluding review of constitutional claims or questions of law raised upon a petition for *review* ....") (emphasis added). By contrast, where no jurisdiction-denying provision of the INA is implicated, a reviewing court need not resort to the jurisdictional terms of Section 106, but is instead presumed to have the authority to

consider *"all* questions of law and fact, including interpretation and application of constitutional and statutory provisions" in reviewing a final order of removal. *See* 8 U.S.C. § 1252(b)(9) (emphasis added); *Sanusi v. Gonzales,* 445 F.3d 193, 198–99 (2d Cir. 2006); *cf. Kambolli,* 449 F.3d at 461 (acknowledging "the default rule that absent a provision of law to the contrary, action by an IJ or the BIA may be reviewed when the BIA's final action comes before this Court," but finding no jurisdiction to review the BIA's "streamlining" decision because there is no "meaningful standard against which a Court of Appeals may assess the decision").

mere resort to the terms conventionally used in describing constitutional claims and questions of law will not overcome Congress's decision to deny jurisdiction over claims which in reality consist of nothing more than quarrels over the correctness of fact-finding and of discretionary decisions. *See Higuit v. Gonzales*, 433 F.3d 417, 420 (4th Cir.2006) ("We are not free to convert every immigration case into a question of law, and thereby undermine Congress's decision to grant limited jurisdiction over matters committed in the first instance to the sound discretion of the Executive."). Accordingly, we conclude that, on this record, petitioner's mere assertion that the IJ and the BIA "fail[ed] to apply the law" does not convert a mere disagreement with the IJ's factual findings and exercise of discretion into a constitutional claim or a question of law.[9] *See Jean v. Gonzales*, 435 F.3d 475, 481 (4th Cir.2006) (dismissing petitioner's argument that the BIA "fail[ed] to address" her claims because the petitioner argued only that the IJ "drew the wrong conclusions from the evidence and the BIA, in adopting these conclusions, erroneously decided not to exercise its discretion to grant a

waiver of inadmissibility"); *see also Elysee v. Gonzales*, 437 F.3d 221, 223–24 (1st Cir. 2006) (dismissing petitioner's claim, *inter alia*, that the IJ "complete[ly] disregard[ed]" relevant hardships in making a discretionary cancellation of removal determination because petitioner merely "attack[ed] . . . the factual findings made and the balancing of factors engaged in by the IJ").

Moreover, we emphasize that our jurisdiction in this case is not restored by the REAL ID Act on the ground that the IJ's decision involved the allegedly erroneous "application" of a statute—here, 8 U.S.C. § 1158(a)(2)(B) and (D). While the term "questions of law" undeniably can encompass claims of "erroneous *application* or interpretation of statutes," *St. Cyr*, 533 U.S. at 302, 121 S.Ct. 2271 (emphasis added), every discretionary determination under the INA can in some sense be said to reflect an "application" of a statute to the facts presented. *See Mu–Xing Wang v. Ashcroft*, 320 F.3d 130, 142 (2d Cir.2003).[10] The mere use of the term "erroneous application" of a statute will not, however, convert a quarrel over an exercise of discretion into a question of law.[11] *See Jun*

9. We recognize that petitioner raised two additional issues in her petition for review to this Court. As discussed in note 1, *ante*, these arguments were not raised below before either the IJ or the BIA. The issues are therefore unexhausted and we do not consider them.

10. Prior to the REAL ID Act, we held that the scope of habeas review "extends to claims of erroneous *application* or interpretation of statutes," *see Mu–Xing Wang*, 320 F.3d at 143 (citing *St. Cyr*, 533 U.S. at 302, 121 S.Ct. 2271). In *Mu–Xing Wang*, the IJ's determination as to whether the petitioner had demonstrated that he was more likely than not to be tortured under the statute and regulations implementing the CAT did not involve the exercise of the IJ's discretion. *See* 8 C.F.R. § 208.16(c)(4) (stating that the IJ *"shall . . .* determine whether the alien is more likely

than not to be tortured in the country of removal," and if so, "the alien is *entitled* to protection under the [CAT]") (emphases added). Our Court thus had no occasion in *Mu–Xing Wang* to draw any distinction between "discretionary" determinations, on the one hand, and the "erroneous application or interpretation of statutes," on the other.

11. We emphasize, however, that our analysis above does not foreclose the possibility of a case in which the "application" of a statute actually presents a "question of law" within the meaning of the REAL ID Act. Although we need not specify here any precise dividing line between the "application or interpretation" of a statute, on the one hand, and the "exercise of discretion," on the other, we note that the Fourth Circuit's analysis in *Jean v. Gonzales*, 435 F.3d 475 (4th Cir.2006), is instructive on this score. In that case, the Court held that

*Min Zhang v. Gonzales,* 457 F.3d 172, 178 n. 3 (2d Cir.2006) (Cabranes, J., concurring) (joined by Walker, C.J.) (rejecting proposed interpretation of "questions of law" that would permit "any discretionary, fact-based decision" to be "recast as a definitional inquiry involving the application[ ] of contoured statutory language to a particular set of facts") (alteration in original) (internal quotation marks omitted). We must look to the *nature of the argument* being advanced in the petition and determine whether the petition raises "constitutional claims or questions of law" or merely objects to the IJ's fact-finding or exercise of discretion. This petitioner's challenge is merely an objection to the IJ's factual findings and the balancing of factors in which discretion was exercised. *See Elysee,* 437 F.3d at 223–24 (concluding that the petitioner did not raise "even a colorable ... question of law" where he merely "attack[ed] ... the factual findings made and the balancing of factors engaged in by the IJ"); *Higuit,* 433 F.3d at 420 (dismissing petition for review of an IJ's "adjustment of status determination" because it "was an *equitable* determination

based on *factual* findings rather than a question of law") (emphases added). Accordingly, for the reasons stated above, we dismiss the petition for review of the denial of asylum because we lack jurisdiction to hear it.

## II. Withholding of Removal

In addition to seeking review of the BIA's refusal to consider her untimely asylum application on the merits, petitioner challenges the IJ's denial—affirmed by the BIA—of her application for withholding of removal. As the IJ recognized, eligibility for withholding of removal is not subject to 8 U.S.C. § 1158(a)(2)(B)'s one-year bar and, accordingly, must be considered by the BIA regardless of the timeliness of the initial asylum request. *Compare* 8 U.S.C. § 1158(b)(1)(A) ("[T]he Attorney General *may* grant asylum to an alien who has applied for asylum ....") (emphasis added), *with* 8 U.S.C. § 1231(b)(3)(A) ("[T] he Attorney General *may not* remove an alien to a country if the Attorney General decides that the alien's life or freedom would

---

the BIA's decision that the petitioner was *"statutorily precluded* from demonstrating good moral character" was "not a discretionary decision," but rather, was "essentially a legal determination involving the application of law to factual findings." *Id.* at 482 (emphasis added); *cf. Sepulveda v. Gonzales,* 407 F.3d 59, 63–64 (2d Cir.2005) (exercising jurisdiction, in a pre-REAL ID Act case, to review an IJ's "non discretionary" determination that the petitioner "was unable to establish good moral character *as a matter of law")* (emphasis added) (internal quotation marks omitted). Accordingly, the Court had jurisdiction to review the "question of law" presented. *See Jean,* 435 F.3d at 482.

At the same time, however, the Fourth Circuit declined to review the BIA's discretionary denial of a waiver of inadmissibility under 8 U.S.C. § 1182(h), noting that the petitioner "argue[d] only that the immigration judge drew the wrong *factual* conclusions from the evidence and then determined these conclu-

sions outweighed any factors supporting a favorable exercise of *discretion." Id.* at 480 (emphases added). Because the petitioner had in that respect failed to present a "question of law" under the REAL ID Act, the Court lacked jurisdiction to review the claim. *See id.; see also Wallace v. Gonzales,* 463 F.3d 135, 138, 140 (2d Cir.2006) (reviewing whether the BIA may permissibly consider, as a matter of law, a petitioner's New York State Youthful Offender Adjudication when evaluating an adjustment of status application, but dismissing petitioner's challenge to the BIA's conclusion that his criminal history rendered him unworthy of discretionary relief, concluding that petitioner's challenge was "an 'abuse of discretion' claim disguised as a question of law"); *Bugayong,* 442 F.3d at 72 (dismissing petitioner's "argument that the IJ erred in evaluating his hearing testimony" because it was "at bottom, a challenge to the IJ's exercise of his discretion").

be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion.") (emphasis added).

 To qualify for withholding of removal under the INA, an applicant must establish that there is a "clear probability" that if she were removed, her life or freedom would be threatened on account of political opinion or the other protected grounds listed in 8 U.S.C. § 1231(b)(3)(A). *See, e.g., Secaida–Rosales v. INS,* 331 F.3d 297, 306 (2d Cir.2003). Similarly, to qualify for withholding of removal under the CAT, an applicant must demonstrate that it is more likely than not that she will be tortured if she returns to the proposed country of removal. *See Mu–Xing Wang,* 320 F.3d at 133–34 (citing 8 C.F.R. § 208.16(c)(2)). Evidence of past persecution creates "a rebuttable presumption ... that there is a clear probability of a future threat should the applicant be returned." *Secaida–Rosales,* 331 F.3d at 306; *see also* 8 C.F.R. § 208.16(b)(1).

In the instant case, petitioner argues that she is entitled to withholding of removal under both the INA and the CAT because her alleged subjection to a forced abortion in China would create a rebuttable presumption that it is more likely than not that she will be sterilized, or otherwise persecuted, if she returns to China. She contends that forcible sterilization is particularly likely since, in contravention of China's family-planning policy, she has had

more children since arriving in the United States.

 The BIA has recognized that "[c]oerced sterilization [should be] viewed as a permanent and continuing act of persecution." *In re Y–T–L–,* 23 I. & N. Dec. 601, 607 (B.I.A.2003); *see also* 8 U.S.C. § 1101(a)(42) (treating coercive family planning as persecution on the basis of political opinion). Consequently, if petitioner had demonstrated to the IJ that there was a clear probability that she would be sterilized if she returned to China, she would be entitled to withholding of removal under the INA. Such relief was denied, however, because the IJ found that petitioner had not met her burden of proof, given that her testimony was "inherently improbable, internally inconsistent, [and] inconsistent with her written application as well as some of her supporting documents." [12] IJ Decision at 9.

 Because asylum and withholding of removal determinations require intensive factual inquiries that appellate courts are ill-suited to conduct, the INA tightly circumscribes our review of factual findings, including adverse credibility determinations, by an IJ. *See* 8 U.S.C. § 1252(b)(4)(B) (providing that on appeal "the administrative findings of fact are *conclusive* unless any reasonable adjudicator would be *compelled* to conclude to the contrary") (emphases added). Under this strict standard of review, "we defer to the factual findings of the BIA and the IJ if

---

**12.** The IJ conducted his adverse credibility analysis as part of his denial of petitioner's asylum application on the merits, which in turn was premised on the IJ's assumption, made in the alternative, that petitioner's asylum claim was not in fact barred by the one-year rule of 8 U.S.C. § 1158(a)(2)(B). *See* IJ Decision at 4 ("However[,] if the Court did make an[ ] error in finding [petitioner] statutorily ineligible for asylum[,] the Court will proceed with the decision on the basis that

[petitioner] is eligible and would find that because she has not been credible today, the Court would deny her application."). Because "an applicant who fails to establish [her] eligibility for asylum necessarily fails to establish eligibility for withholding" of removal, *Zhou Yun Zhang v. INS,* 386 F.3d 66, 71 (2d Cir.2004), the IJ's adverse credibility findings rejecting petitioner's asylum claim apply equally to the IJ's denial of petitioner's application for withholding of removal.

they are supported by substantial evidence," [13] *see Zhou Yun Zhang v. INS,* 386 F.3d 66, 73 (2d Cir.2004), and where, as here, the IJ bases his denial of asylum and withholding of removal on a finding that a petitioner's application is not credible, our review is "highly deferential." *See Zhou Yi Ni v. U.S. Dep't of Justice,* 424 F.3d 172, 174 (2d Cir.2005); *Xu Duan Dong v. Ashcroft,* 406 F.3d 110, 111 (2d Cir.2005); *Jin Hui Gao v. U.S. Att'y Gen.,* 400 F.3d 963, 964 (2d Cir.2005); *see also Yun–Zui Guan v. Gonzales,* 432 F.3d 391, 396 (2d Cir.2005) ("Reviewing a factfinder's determination of credibility is ill-suited to attempts to fashion rigid rules of law."); *Zhou Yun Zhang,* 386 F.3d at 73 ("When a factual challenge pertains to a credibility finding made by an IJ ... we afford 'particular deference' in applying the substantial evidence standard.") (quoting *Montero v. INS,* 124 F.3d 381, 386 (2d Cir.1997)). Accordingly, "[w]here the IJ's adverse credibility finding is based on specific examples in the record of inconsistent statements by the asylum applicant about matters material to his claim of persecution, or on contradictory evidence or inherently improbable testimony regarding such matters, a reviewing court will generally not be able to conclude that a reasonable adjudicator was compelled to find otherwise." *Zhou Yun Zhang,* 386 F.3d at 74 (internal quotation marks omitted).

 Consistent with our " 'exceedingly narrow' " scope of review, *Melgar de Torres v. Reno,* 191 F.3d 307, 313 (2d Cir.1999) (quoting *Carranza–Hernandez v. INS,* 12 F.3d 4, 7 (2d Cir.1993)), we will "look to see if the IJ has provided 'specific, cogent' reasons for the adverse credibility finding and whether those reasons bear a 'legitimate nexus' to the finding." [14] *Zhou Yun Zhang,* 386 F.3d at 74 (quoting *Secaida–Rosales,* 331 F.3d at 307). That review is designed to ensure merely that "credibility findings are based upon neither a misstatement of the facts in the record nor bald speculation or caprice." *Id.* Thus, in reviewing an IJ's findings for "substantial evidence," our limited role as an appellate court does not permit us to engage in an

---

13. The "substantial evidence" standard has its origins in the Administrative Procedure Act, which provides that "[t]he reviewing court shall ... hold unlawful and set aside agency action, findings, and conclusions found to be ... unsupported by substantial evidence in a case ... reviewed on the record of an agency hearing provided by statute...." 5 U.S.C. § 706(2)(E). That principle of "substantial evidence" was reflected in the former 8 U.S.C. § 1105a(a)(4), which the Supreme Court interpreted in *INS v. Elias–Zacarias,* 502 U.S. 478, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992), to provide that a "determination that [petitioner] was not eligible for asylum *must* be upheld if 'supported by reasonable, substantial, and probative evidence on the record considered as a whole.' " *Id.* at 481, 112 S.Ct. 812 (emphasis added) (quoting 8 U.S.C. § 1105a(a)(4)). Section 1105a(a)(4) was repealed in 1996 and replaced by 8 U.S.C. § 1252(b)(4)(B), which provides that on appeal "the administrative findings of fact are *conclusive* unless any reasonable adjudicator would be *compelled* to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B) (emphases added). Although the language of § 1252(b)(4)(B) indicates an even more deferential standard of review than was historically provided by the "substantial evidence" standard, we are required to adhere to the law of our Circuit, which continues to characterize our review in terms of "substantial evidence."

14. By requiring in *Secaida–Rosales v. INS,* 331 F.3d 297, 307 (2d Cir.2003), that an IJ provide "specific, cogent" reasons that bear a "legitimate nexus" to an adverse credibility finding—a standard that can be summarized as a requirement that an IJ base his adverse credibility determination on "material" grounds—we did not set forth a rigid rule of law governing our review of an IJ's credibility determinations. Rather, we intended to plant guideposts to assist a reviewing court's determination of whether an IJ has provided substantial evidence in support of his adverse credibility determination.

independent evaluation of the cold record or ask ourselves whether, if we were sitting as fact-finders in the first instance, we would credit or discredit an applicant's testimony. *See Zhou Yun Zhang,* 386 F.3d at 74 ("[T]he [reviewing] court may not itself hypothesize excuses for ... inconsistencies [in a petitioner's testimony], nor may it justify the contradictions or explain away the improbabilities. Its limited power of review will not permit it to reverse the BIA simply because [it] disagree[s] with its evaluation of the facts.") (last two alterations in original) (internal quotation marks omitted).

 Of course, the fact that an IJ "has relied primarily on credibility grounds in dismissing an asylum application cannot insulate the decision from review." *Ramsameachire v. Ashcroft,* 357 F.3d 169, 178 (2d Cir.2004). If the testimony provided is otherwise "generally consistent, rational, and believable," the presence of some inconsistent testimony need not necessarily be fatal to a petitioner's claims if the disparities are "relatively minor and isolated and do not concern material facts." *See Diallo v. INS,* 232 F.3d 279, 288 (2d Cir.2000) (citation omitted). Likewise, an IJ's credibility determination will not satisfy the substantial evidence standard when it is based entirely on flawed reasoning, bald speculation, or conjecture. *See Secaida–Rosales,* 331 F.3d at 307, 312. Moreover, where an IJ's decision "omit[s] potentially significant facts" so fundamental to the claim that "we are unable adequately to consider whether substantial evidence support[ed] the BIA's determination," we may remand for further consideration. *See Tian–Yong Chen v. INS,* 359 F.3d 121, 127 (2d Cir.2004).[15] Nevertheless, we may affirm an adverse credibility finding even when the IJ's reasoning is deficient in certain respects, provided that despite any errors—considered in the context of the IJ's entire analysis— we can state with confidence that the same decision would be made if we were to remand. *See Cao He Lin v. U.S. Dep't of Justice,* 428 F.3d 391, 395, 401–02 (2d Cir. 2005).

██ Although we customarily afford " 'particular deference to the credibility

---

**15.** We emphasize that the standard for remand outlined in *Tian–Yong Chen* is permissive—namely, a reviewing court "may," but is not required to, remand "where the agency's determination is based on an inaccurate perception of the record, omitting potentially significant facts." *See Tian–Yong Chen,* 359 F.3d at 127. Indeed, in *Tian–Yong Chen,* we remanded precisely because we had determined that the IJ and the BIA had committed "fundamental error," and therefore reached a decision that was "fatally flawed," due to the "undisputed failure by the IJ and the BIA ... to acknowledge, much less evaluate, [petitioner's] testimony that he had been beaten" by Chinese authorities. *Id.* at 127–28; *see also id.* at 128 ("The IJ erred in overlooking [petitioner's] testimony that he had been beaten, and the BIA perpetuated and compounded that flaw by not only ignoring the testimony but also flatly asserting that no such testimony existed in the record."). We deemed petitioner's statement that he had been beaten to be a "significant aspect of [petitioner's] testimony in support of his claims of past persecution and future persecution," and, consequently, we remanded because the agency's errors could not "be viewed as inconsequential." *Id.* at 128; *see also Alvarado–Carillo v. INS,* 251 F.3d 44, 50 (2d Cir.2001) (remanding where BIA's decision "suffer[ed]" from "serious flaws," including a "patently erroneous" characterization by the BIA of the applicant's testimony). Accordingly, *nothing in Tian–Yong Chen supports the proposition that a reviewing court is required to remand simply because it disagrees with an IJ's evaluation of the facts, particularly where, as here, the IJ's decision is supported by substantial evidence.* Cf. *Tian–Yong Chen,* 359 F.3d at 128 (remanding because the BIA's decision was "fatally flawed and *we [we]re unable adequately to consider whether substantial evidence support[ed] the BIA's determination*") (emphasis added).

determinations of the IJ,'" *Wu Biao Chen v. INS*, 344 F.3d 272, 275 (2d Cir.2003) (quoting *Montero v. INS*, 124 F.3d 381, 386 (2d Cir.1997)), in this case we are troubled by the fact that the IJ's opinion occasionally lapses into the sort of "bald speculation" we warned against in *Zhou Yun Zhang*, 386 F.3d at 74. For example, the IJ (1) stated that it made "absolutely no sense" that petitioner "decided to risk her pregnancy ... to go back to work" shortly after discovering that she was pregnant for the second time, IJ Decision at 10; (2) commented that he could not "understand [petitioner's] testimony regarding [officials] wanting to sterilize her after [forcing her to undergo an] abortion," *id.* at 11; and (3) expressed skepticism about petitioner's veracity because "nothing happened to [petitioner's] husband other than brief detention and almost losing his job," *id.* at 12.

There is nothing extraordinary in petitioner's claim that she continued working in the early months of her second pregnancy.[16] Nor would it require a great leap of faith to credit petitioner's contention that officials might attempt to sterilize her after forcing her to undergo an abortion. Finally, we do not believe that detention combined with threatened deprivation of economic livelihood is "nothing." We do not, consequently, rely on the IJ's findings to the extent that he erroneously mischaracterized petitioner's testimony or determined that petitioner was not credible due to perceived implausibilities or inconsistencies that were based solely on the IJ's "bald speculation." *See Zhou Yun Zhang*, 386 F.3d at 74 ("[O]ur review is meant to ensure that credibility findings are based upon neither a misstatement of the facts in the record nor bald speculation or caprice.").

Notwithstanding the foregoing, it is not enough for petitioner to point to some deficiencies in the IJ's factual analysis because, here, the IJ's denial of petitioner's claim for withholding of removal was supported by substantial evidence and we are confident that the same decision would be made in the absence of the noted deficiencies. The IJ found petitioner's testimony inconsistent with her medical records,[17]

**16.** Relatedly, the IJ rejected as "incredibly implausible" petitioner's claim that she had gone into "hiding" at her mother's home upon the discovery of her second pregnancy, reasoning that "[t]he purpose of going into ... hiding is to avoid the officials," and yet petitioner's workplace was "the very first place" those officials would have searched for petitioner "other than her home." *See* IJ Decision at 10. We do not find the IJ's reasoning impermissibly speculative on its own terms; nor does the mere characterization of petitioner's claim as "implausible" itself render the IJ's finding erroneous. *See Diallo*, 232 F.3d at 287–88 (stating that an adverse credibility determination may "appropriately [be] based upon inconsistent statements, contradictory evidence, and *inherently improbable testimony*") (emphasis added) (internal quotation marks omitted). *Compare Jin Hui Gao*, 400 F.3d at 964 (concluding that "the IJ had a supportable basis for finding aspects of [petitioner's] testimony inherently implausible

and for concluding that these implausibilities further diminished [petitioner's] credibility"), *with Cao He Lin*, 428 F.3d at 403 (rejecting "the IJ's conclusion that [petitioner's] story [wa]s implausible" because the IJ had failed to provide "a reasoned evaluation of [petitioner's] explanations").

**17.** Specifically, the IJ found inconsistent petitioner's testimony that she had been forced to terminate her second pregnancy after approximately sixteen weeks on October 20, 1997, when instead petitioner's medical records indicated that she had undergone an abortion in July 1993 after eight weeks' gestation. In so finding, the IJ both acknowledged and rejected the explanation provided by petitioner's counsel for this inconsistency—namely, that another "perceive[d]" inconsistency in the medical records rendered them unreliable. The IJ instead emphasized that petitioner's medical records exhibited independent reliability because they correctly provided the

her written asylum application,[18] other documents she submitted in support of her application,[19] and the State Department profile for her region.[20] These findings of

date on which petitioner's first child was born. Although petitioner's counsel invites this court to reevaluate the independent reliability of petitioner's medical records, that is simply not our role. A petitioner "must do more than offer a 'plausible' explanation for [her] inconsistent statements to secure relief," *Zhou Yun Zhang*, 386 F.3d at 74, and it is beyond the scope of our reviewing authority to "hypothesize excuses for the inconsistencies, nor may [we] justify the contradictions or explain away the improbabilities," *id.* at 74.

Petitioner's other claim on appeal—namely, that the IJ erred in failing to reject expressly petitioner's own explanation for the testimonial inconsistency with her medical records— is similarly without merit. When confronted with this inconsistency, petitioner suggested that the hospital staff had "made a mistake" and indicated that she had told her doctor that she "gave birth to one [child] and the other one was aborted"—an explanation that was insufficient, inasmuch as it did not adequately address *when* but only *whether* petitioner had previously undergone an abortion, forced or otherwise. *Cf. Wu Biao Chen*, 344 F.3d at 275 (rejecting petitioner's *"ex post* justifications" for discrepancies, including petitioner's suggestion that immigration officer had made "a mistake" in drafting airport interview statement). Although we have stated that an IJ is required to "take ... into account ... *significant* factual assertions" offered by a petitioner, *see Cao He Lin*, 428 F.3d at 403 (emphasis added), we have never required, and we do not require here, that an IJ expressly parse or refute on the record each and every one of a petitioner's purported explanations for testimonial inconsistencies or evidentiary gaps. *See Morales v. INS*, 208 F.3d 323, 328 (1 st Cir.2000) ("Where, as here, the [BIA] has given reasoned consideration to the petition, and made adequate findings, we will not require that it address specifically each claim the petitioner made or each piece of evidence the petitioner presented.") (internal quotation marks omitted); *see also* 8 C.F.R. § 1240.11(c)(4) (requiring only that "[a]n adverse decision shall state why asylum or withholding of removal was denied"). Indeed, we presume that an IJ has taken into account all of the evidence before him, unless the record compellingly suggests otherwise.

Accordingly, the IJ need not engage in "robotic incantations" to make clear that he has considered and rejected a petitioner's proffered explanation. *Cf. Brown*, 98 F.3d at 694 (rejecting a requirement that district judges engage in "robotic incantations" in the context of sentencing).

18. Specifically, petitioner's affidavit submitted in connection with her asylum application indicated that her second pregnancy had been discovered during a required quarterly IUD check-up in October 1997, whereas petitioner testified before the IJ that her second pregnancy had instead been discovered when local birth control officials came to her place of work *after* she had missed both the July and October 1997 IUD check-ups. Because the circumstances under which petitioner's second pregnancy was discovered and terminated were material to her claim of past and future persecution, the IJ did not err in relying on this inconsistency. *See Xu Duan Dong*, 406 F.3d at 111–12 (upholding adverse credibility determination based on omission of "an essential factual allegation underlying petitioner's asylum claim").

19. The IJ noted in particular that there were inconsistencies between petitioner's testimony and the documentary evidence in the record regarding her age at the time her IUD was inserted, the date on which the IUD insertion occurred, and when petitioner was instructed to report for sterilization after her abortion. Although the IJ acknowledged that these inconsistencies were "minor," the IJ did not err in stressing the cumulative impact of such inconsistencies in making his adverse credibility determination. *See* IJ Decision at 11 ("Although this is a minor inconsistency[,] there are plenty of minor inconsistencies that do add up and end up to undermine[ ] [petitioner's] credibility."); *see also In re A–S–*, 21 I. & N. Dec. 1106, 1112 (B.I.A. Feb. 19, 1998) ("[A] credibility determination apprehends the *overall* evaluation of testimony in light of its rationality or internal consistency and the manner in which it hangs together with other evidence.") (emphasis added) (internal quotation marks omitted).

20. *See post* at 341–42.

fact by the IJ qualify as "specific, cogent" reasons that bear a "legitimate nexus" to the IJ's adverse credibility finding, *Secaida–Rosales,* 331 F.3d at 307 (internal quotation marks omitted), and substantially support the IJ's ultimate determination that petitioner failed to provide a credible account of persecution and thus failed to satisfy her burden of proof. *See Zhou Yun Zhang,* 386 F.3d at 74.

■ We note that recently, in *Cao He Lin v. U.S. Dep't of Justice,* 428 F.3d 391 (2d Cir.2005), another panel of our Court identified three circumstances in which a petition challenging a rejection of an asylum claim could be denied despite errors committed by the IJ. These are (1) where the IJ explicitly relies on a valid alternative ground for denying relief that is not tainted by error, (2) where the error is so "tangential" to the ultimate ruling that there is no realistic possibility of a different result on remand, or (3) where the untainted evidence in support the IJ's conclusion is so "overwhelming" that there is no realistic possibility of a different result on remand. *See id.* at 395, 401–02. These circumstances present non-exclusive variations of the general principle of futility— an error does not require a remand if the remand would be pointless because it is clear that the agency would adhere to its prior decision in the absence of error. *See, e.g., NLRB v. Wyman–Gordon Co.,* 394 U.S. 759, 766 n. 6, 89 S.Ct. 1426, 22 L.Ed.2d 709 (1969) (emphasizing that *SEC v. Chenery Corp.,* 318 U.S. 80, 63 S.Ct. 454, 87 L.Ed. 626 (1943), "does not require that we convert judicial review of agency action into a ping-pong game" and that remand is not required where it "would be an idle and useless formality"); *NLRB v. Am. Geri-Care, Inc.,* 697 F.2d 56, 64 (2d Cir. 1982) ("[R]eversal and remand are [not] required each and every time an administrative agency assigns a wrong reason for

its action; rather, [remand is required] *only* where there is a significant chance that but for the error, the agency might have reached a different result.").

In *Cao He Lin,* the panel rejected every ground for the IJ's adverse credibility finding, as well as the IJ's determination that the petitioner had failed to satisfy his burden of proof. *See Cao He Lin,* 428 F.3d at 404 (concluding that "the IJ's principal reasons for generally discounting [petitioner's] credibility are seriously flawed" and that "[i]n reviewing [certain] subsidiary findings" regarding both credibility and sufficiency of the evidence, "we find that each one is flawed"). Accordingly, the Court remanded because it could not state with confidence that the IJ would make the same decision in the absence of such systemic error. *See id.* at 406. The panel thus held that a remand was appropriate under such circumstances; by also identifying potential circumstances where a remand would *not* have been required, the panel was of course offering dicta. *See Carroll v. Lessee of Carroll,* 57 U.S. (16 How.) 275, 286–87, 14 L.Ed. 936 (1853) (Curtis, J.) ("[I]f [a point of law] might have been decided either way without affecting any right brought into question, then, according to the principles of the common law, an opinion on such a question is not a decision."); *see also United States v. Garcia,* 413 F.3d 201, 232 n. 2 (2d Cir.2005) (Calabresi, J., concurring) ("[Dicta] is not and cannot be binding. Holdings—what is necessary to a decision—are binding. Dicta—no matter how strong or how characterized-are not."). Accordingly, *Cao He Lin* did not provide a binding, comprehensive test for determining all the circumstances where IJ errors *need not* require a remand.

■ It suffices for us to hold in this case that (1) substantial evidence in the record relied on by the IJ, considered in

the aggregate, supports the IJ's finding that petitioner lacked credibility, and (2) disregarding those aspects of the IJ's reasoning that are tainted by error, we can state with confidence that the same decision would be made were the petition remanded. Indeed, we do not believe that the erroneous aspects of the IJ's decision in this case were entirely "tangential" to his decision; nor are we persuaded that "overwhelming evidence" supports the IJ's adverse credibility finding. *Cf. Cao He Lin*, 428 F.3d at 406. In suggesting by way of dicta that remand of an error-infected finding could be avoided if "overwhelming" evidence supported the IJ's ultimate finding, or if the IJ's error is sufficiently "tangential," the panel in *Cao He Lin* was simply illustrating two circumstances under which a remand would be futile. *See id.* at 402 (observing that "[t]he futility of a remand would support affirming despite legal error ... in *at least* [those] two circumstances") (emphasis added). The overarching test for deeming a remand futile, as *Cao He Lin* recognized, is when the reviewing court can "confidently predict" that the agency would reach the same decision absent the errors that were made.[21] *See id.* at 395. The strength of the error-free portions of an IJ's ultimate finding that will permit a panel to state with confidence that a remand would be futile cannot be precisely quantified. Whether the evidence supporting the error-free findings is charac-

terized as "overwhelming," "significant," "highly persuasive," or some other comparable wording is more a matter of linguistics than law. If the reviewing court undertakes to determine whether remand would be futile, it should assess the entire record and determine whether, based on the strength of the evidence supporting the error-free findings and the significance of those findings, it is clear that the agency would adhere to its decision were the petition remanded. Accordingly, although we certainly retain our ability to *remand* where appropriate, *see id.*, we also retain our ability to *affirm* an IJ's factual findings—including an adverse credibility determination—despite error, where that analysis is otherwise supported by substantial evidence and we can state with confidence that the same decision would be made on remand.[22] *See Jin Chen v. U.S. Dep't of Justice*, 426 F.3d 104, 115 (2d Cir.2005) (affirming adverse credibility finding as "supported by substantial evidence" even though one of the IJ's grounds "d[id] seem to defy logic"); *Zhou Yun Zhang*, 386 F.3d at 78–79 (concluding that any error in requiring corroboration did not merit relief because the IJ's "adverse credibility findings, by themselves, constitute[d] substantial evidence to support" the denial of petitioner's asylum application); *Ramsameachire*, 357 F.3d at 182 n. 3 (affirming adverse credibility finding despite disagreeing with one of the bases for that finding because "the other

---

21. Although *Cao He Lin* and our prior decision in this case assessed whether we could be confident that *the IJ* would reach the same result on remand absent error, *see Xiao Ji Chen*, 434 F.3d at 161–62; *Cao He Lin*, 428 F.3d at 395, we refer here to "the agency" in order to account for cases in which we are required to review a substantive decision directly from the BIA, as well as cases in which the BIA has summarily affirmed an IJ's decision. *See Li Hua Lin v. U.S. Dep't of Justice*, 453 F.3d 99, 108 n. 7 (2d Cir.2006).

22. Of course, in reviewing an IJ's decision we "ordinarily will not affirm based on evidence that may appear in the record but that was not relied on in the IJ's decision because we cannot know how the IJ would have viewed evidence she did not analyze." *Cao He Lin*, 428 F.3d at 400; *see also Jin Shui Qiu v. Ashcroft*, 329 F.3d 140, 149 (2d Cir.2003) (noting that "factual findings supporting ... a denial [cannot] be assumed on the basis of record evidence not relied on by the BIA").

inconsistencies on which the BIA relied [we]re sufficient to support its judgment"); *see also Tarrawally v. Ashcroft*, 338 F.3d 180, 187 (3d Cir.2003) (affirming adverse credibility finding as supported by "substantial evidence" even though "[s]ome of the IJ's reasons for his adverse credibility determination were based on presumptions not grounded in the record"); *Hakeem v. INS*, 273 F.3d 812, 816 (9th Cir.2001) (finding part of IJ's reasoning "[un]persuasive" but denying petition for review where "[t]he IJ offered alternative reasons . . . . [that] [we]re supported by substantial evidence"); *Ceballos–Castillo v. INS*, 904 F.2d 519, 521 (9th Cir.1990) (affirming adverse credibility determination "[e]ven though . . . one of four reasons cited by the BIA [wa]s not supported by the record" because the BIA's determination of "incredibil[ity] [found] substantial support in the record"); *cf. Jin Shui Qiu v. Ashcroft*, 329 F.3d 140, 149 (2d Cir.2003) (stating that "we will *vacate* BIA conclusions . . . insofar as the BIA . . . has not supported its findings with record evidence").

Applying this well-established standard of substantial evidence to the facts of this case, we deny the petition for review of the IJ's denial of withholding of removal because, although the underlying analysis of the IJ contains errors, the IJ's ultimate ruling—namely, that petitioner failed to provide a credible account of persecution and thus failed to satisfy her burden of proof—is supported by substantial evidence and it is clear that the same decision would be made on remand.

Petitioner's claims that the IJ erred in other respects—(1) by failing to articulate specific reasons for denying her CAT claim beyond his adverse credibility finding, (2) by making insufficient findings with respect to the corroborating documents she submitted in support of her application while improperly faulting her for not producing others, and (3) by relying on the State Department profile—are similarly without merit.

■ First, as we explained in *Ramsameachire v. Ashcroft*, 357 F.3d 169 (2d Cir.2004), because a "CAT claim lacks a subjective element, focuses broadly on torture without regard for the reasons for that treatment, and requires a showing with respect to future, rather than past, treatment," *id.* at 185 (citing 8 C.F.R. § 208.16(c)(3), (4)), it "must always be considered independently of the resolution of the alien's claims under the INA." *Id.* The fact that a CAT claim does not turn on the applicant's subjective state of mind and that it must be considered separately from the applicant's INA claim, however, does not shift the burden of proof. Under the applicable regulations, it is still the applicant seeking CAT relief who is required to establish that it is more likely than not that she would be tortured if removed to the proposed country of removal. *See* 8 C.F.R. § 208.16(c)(2). Accordingly, where, as here, the applicant relies largely on testimonial evidence to establish her CAT claim, and does not independently establish a probability of torture apart from her stated fear, an adverse credibility finding regarding that testimonial evidence may provide a sufficient basis for denial of CAT relief.[23]

---

**23.** Our holding here does not conflict with the statement in *Ramsameachire* purporting to "hold that the INS may not deny an alien's CAT claim solely on the basis of its determination that the applicant's testimony is not credible." *Ramsameachire*, 357 F.3d at 184 (reasoning that "the INS's regulations require it to consider all relevant evidence of the possibility of torture, and the CAT and asylum analyses focus on different elements and therefore must be treated independently"). We read *Ramsameachire's* focus on the differences between withholding of removal claims under the INA and the CAT to provide that

▮ Second, in rejecting an applicant's claim, the IJ should "consider all the evidence in the record that has probative value." *Cao He Lin,* 428 F.3d at 400. But he need not enumerate and evaluate on the record each piece of evidence, item by item, or specifically find, when faulting an applicant for not producing sufficient evidence, that additional documentation was reasonably available to her. *See Yan Lan Wu v. Ashcroft,* 393 F.3d 418, 425 n. 10 (3d Cir.2005) ("[T]he Immigration Judge need not discuss each and every piece of evidence presented by an asylum applicant when rendering a decision, as long as that decision is substantially supported."); *Morales v. INS,* 208 F.3d 323, 328 (1st Cir.2000) ("Where, as here, the [BIA] has given reasoned consideration to the petition, and made adequate findings, we will not require that it address specifically each claim the petitioner made or each piece of evidence the petitioner presented.") (internal quotation marks omitted); *cf.' United States v. Crosby,* 397 F.3d 103, 113 (2d Cir.2005) (noting that a *statutory* duty to "consider" matters relevant to sentencing does not require "robotic incantations" by district judges). Petitioner contends that the IJ not only failed to consider corroborative documents she submitted, but also failed to explain why she should have provided other documents in support of her claim. In *Jin Shui Qiu v. Ashcroft,* 329 F.3d 140 (2d Cir.2003), we recognized that in certain circumstances, an IJ may not deny relief for failure to produce corroborative evidence, unless the IJ has "(a) identifi[ed] the particular pieces of missing, relevant documentation, and (b)

show[ed] that the documentation at issue was reasonably available to the petitioner." *Id.* at 153. However, as we stated in *Zhou Yun Zhang,* the "requirement for corroborative documents' 'identification' and 'availability' articulated in *Jin Shui Qiu* . . . (as derived from *Diallo v. INS* ) pertains when the IJ or BIA cites inadequate corroboration as a basis for denying [relief] to an applicant who is *otherwise credible.*" *Zhou Yun Zhang,* 386 F.3d at 78; *see Jin Shui Qiu,* 329 F.3d at 152 (stating that "the BIA expressly found no reason to deem [petitioner] incredible"); *Diallo,* 232 F.3d at 287 (noting that "the BIA made no pronouncement on the credibility of [petitioner's] underlying testimony or of his explanations for the lack of additional corroborating evidence"). That is not the case here, as the IJ did not base his rejection of petitioner's claim on an absence of corroborative evidence, but rather, on his finding that petitioner's largely uncorroborated, non-credible testimony was insufficient to establish withholding of removal.

▮ Third, the IJ's reliance on the State Department country report for the Fujian province of China was not in error. As we recognized in *Zamora v. INS,* 534 F.2d 1055 (2d Cir.1976) (Friendly, J.), a report from the State Department is "usually the best available source of information" on country conditions. *Id.* at 1062 ("The obvious source of information on general conditions in the foreign country is the Department of State which has diplomatic and consular representatives throughout the world."); *see also Melgar*

where an applicant can carry her burden on a CAT claim through independent evidence that does not depend on her credibility, the IJ should not reject the claim solely on the basis of an adverse credibility determination. *See id.* at 185 (petitioner's claim did not depend entirely on his own testimony, but rather, was also predicated on independent evidence of

country conditions). By contrast, here, petitioner has presented insufficient evidence independent of her own testimony to satisfy her burden under the CAT. Accordingly, as petitioner's testimony was not credible, and that testimony was crucial to her CAT claim, she is not entitled to CAT relief.

*de Torres,* 191 F.3d at 310, 313 (relying on State Department Profile as "substantial evidence ... of the changed country conditions in El Salvador"). Although we have cautioned that "the immigration court should be careful not to place *excessive* reliance on published reports of the Department of State," *Tian–Yong Chen,* 359 F.3d at 130 (emphasis added), the weight to afford to such evidence "lie[s] largely" within the discretion of the IJ. *See Asociacion de Compositores y Editores de Musica LatinoAmericana v. Copyright Royalty Tribunal,* 854 F.2d 10, 13 (2d Cir.1988) ("[W]e must review a challenge to the Tribunal's evidentiary rulings with some deference, for the type of proof that will be acceptable and the weight it should receive lie largely in the discretion of the [Tribunal].") (internal quotation marks omitted). The IJ here did not treat the country report as if it were "binding," nor did he place "excessive reliance" on that report, *Tian–Yong Chen,* 359 F.3d at 130, particularly in light of the IJ's determination that petitioner's testimony was otherwise lacking in credibility. *Cf. Cao He Lin,* 428 F.3d at 402–04 (remanding to BIA because reliance on report produced by State Department was error, inasmuch as the IJ failed to " 'consider ... any contrary or countervailing evidence' " provided by the applicant, and every other ground for the IJ's adverse credibility finding was erroneous) (internal quotation marks omitted); *Tian–Yong Chen,* 359 F.3d at 128, 130 (instructing immigration court to consider on remand "any contrary or countervailing evidence ... as well as the particular circumstances of the applicant's case," in addition to the State Department's country report, where the IJ and BIA had erroneously "ignor[ed] a significant aspect of [petitioner's] testimony"). Accordingly, the IJ properly considered the inconsistency between petitioner's statements and the country report as part of his overall determination that petitioner's account was not credible.

Because we find that there is substantial evidence supporting the IJ's adverse credibility determination and it is clear that the same decision would be made on remand, and because petitioner has not shown that it is more likely than not that she would be persecuted or tortured were she returned to China, we uphold the IJ's determination, affirmed by the BIA, that petitioner has failed to make the requisite showings to qualify for withholding of removal under either the INA or the CAT.

## CONCLUSION

For the reasons stated above, we DIS-MISS the petition for review of the denial of asylum for lack of jurisdiction. We DENY the remainder of the petition because we conclude that the IJ's decision DENYing petitioner's application for withholding of removal is supported by substantial evidence and it is clear that the same decision would be made were we to remand.