**Edioli XHUTI, Petitioner,**

**v.**

541 n. 1, 545 n. 7 (2d Cir.2005).

Alberto R. GONZALES,[1] U.S. Attorney
General, Respondent.

No. 04–2388–ag.

United States Court of Appeals,
Second Circuit.

July 17, 2007.

---

**1.** Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Attorney General Alberto R. Gonzales is automatically substituted for former Attorney General John Ashcroft as a respondent in this case.

Charles Christophe, New York, NY, for Petitioner.

Alice H. Martin, United States Attorney for the Northern District of Alabama, Michael B. Billingsley, Assistant United States Attorney, Birmingham, AL, for Respondent.

PRESENT: Hon. RICHARD J. CARDAMONE, Hon. ROSEMARY S. POOLER, Hon. ROBERT D. SACK, Circuit Judges.

### SUMMARY ORDER

Petitioner Edioli Xhuti, a native and citizen of Albania, seeks review of an April 20, 2004 order of the BIA affirming the decision of Immigration Judge ("IJ") Teresa Holmes–Simmons denying his applications for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). *In re Edioli Xhuti,* No. A95–378–310 (B.I.A. Apr. 20, 2004), *aff'g* No. A95–378–310 (Immig. Ct. N.Y. City Nov. 27, 2002). We assume the parties' familiarity with the underlying facts and procedural history of the case.

Where, as here, the BIA does not expressly "adopt" the IJ's decision, but its brief opinion closely tracks the IJ's reasoning, the Court may consider both the IJ's and the BIA's opinions for the sake of completeness if doing so does not affect the Court's ultimate conclusion. *See Jigme Wangchuck v. DHS,* 448 F.3d 524, 528 (2d Cir.2006).

■ As an initial matter, this Court lacks jurisdiction to review the IJ's denial of Xhuti's asylum claim, which was based on his failure to prove that he filed his application within one year of entry into the United States or that extraordinary circumstances existed such that he was prevented from filing on time. 8 U.S.C. § 1158(a)(3); *Xiao Ji Chen v. U.S. Dep't of Justice,* 471 F.3d 315, 323 (2d Cir.2006).[2] Moreover, Xhuti has failed to present a colorable constitutional claim or question of law. *See id.* at 324.

Withholding of removal, however, is not subject to any filing deadlines, and the IJ's factual findings underlying the denial of that claim are reviewed for substantial evidence. *See id.* at 339–40. Under this standard, we treat the agency's factual findings as "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B); *see, e.g., Zhou Yun Zhang v. INS,* 386 F.3d 66, 73 & n. 7 (2d Cir.2004). Legal errors are reviewed *de novo,* and we retain "substantial authority" to vacate and remand when the agency has failed to apply the law correctly or to support its findings with record evidence. *See Ivanishvili v. U.S. Dep't of Justice,* 433 F.3d 332, 337 (2d Cir.2006). Here, the IJ improperly denied Xhuti's withholding of removal claim on the basis of adverse credibility.

**2.** It should also be noted that Xhuti failed to exhaust the one-year bar issue before the BIA and therefore this Court lacks jurisdiction to address it on this basis as well. *See* 8 U.S.C. § 1252(d)(1); *Foster v. INS,* 376 F.3d 75, 78 (2d Cir.2004).

■ First, the IJ found it implausible that Xhuti, who held no political position in the Democratic Party, was identified by the police out of thousands of demonstrators and arrested. However, not only did the IJ fail to address Xhuti's testimony regarding the recruitment role he performed in the Democratic Party, she failed to take into account documentary evidence that supports Xhuti's testimony, particularly, a declaration from neighbors who witnessed the arrest. Therefore, we are unable to determine whether the IJ's implausibility finding is supported by substantial evidence. *See Tian–Yong Chen v. INS,* 359 F.3d 121, 128–29 (2d Cir.2004).

■ Next, the IJ discredited as implausible the likelihood of the Albanian government tracking Xhuti by means of video surveillance and later arresting and beating him. Xhuti testified that he participated in a "big rally" of thousands of people following the assassination of the leading Democratic Party leader. He further testified that, two days later, he was arrested and beaten by the police. Xhuti claimed that the police video-taped people and "tracked" their vehicles during the rally and that, afterwards, they arrested "a lot of people." The IJ's finding here is not supported by the record. Specifically, there is a medical certification in the record corroborating the date Xhuti sought medical treatment for the injuries he sustained during the arrest and detention. Although the IJ properly noted that the certification "merely states that [Xhuti] came in for curing" as opposed to detailing the nature of any injuries and the treatment administered, she failed to address the fact that the date listed in the certification coincided with the date Xhuti alleged he was arrested and beaten. Such evidence is probative of Xhuti's claim that he was arrested for participating in the rally and should have, therefore, been considered by the IJ before she discredited his claim as implausible. This finding, therefore, suffers from the same defect—failure to consider evidence supporting petitioner's claim before finding it implausible—as her first implausibility finding.

■ Next, the IJ noted that Xhuti's testimony concerning an attack on him and others at the polling center where he worked during the June 2001 elections was contrary to the 2001 State Department Report, which, according to the IJ, described the 2001 elections as "peaceful." While an IJ is entitled to consider reports on country conditions, she is also obligated to consider countervailing evidence and explain why she credits one over the other. *See Cao He Lin v. U.S. Dep't of Justice,* 428 F.3d 391, 403–04 (2d Cir.2005) ("[w]hile the IJ is entitled to consider the reports, she must also consider .... *any contrary or countervailing evidence ....* as well as the particular circumstances of the applicant's case." (emphasis added)). Not only does the Report fail to describe a "peaceful" election, it actually supports Xhuti's testimony that he reported polling irregularities to the "central committee of elections" and that, consequently, there was an interruption at his polling center. In addition to the IJ's misreading of the Report, she failed to consider and discuss other key evidence in the record that potentially supports Xhuti's claims, particularly a certification from a physician verifying that he treated Xhuti for injuries days after the election, and a declaration from individuals who stated that they witnessed the attack. In light of the IJ's failure to consider this significant evidence, her reliance on the 2001 Report is also analytically flawed. *See, e.g., Jorge–Tzoc v. Gonzales,* 435 F.3d 146, 150 (2d Cir. 2006).

■ The IJ also determined that Xhuti's explanation regarding an incident in-

volving Socialist members throwing a "gasoline cocktail" into Xhuti's house was "highly implausible." Even if the Court were to find the IJ's finding was based on "specific, cogent reasons," because the majority of the factors used by the IJ to support her adverse credibility finding are infected with legal error, this Court cannot confidently predict that she would have reached the same conclusion regarding Xhuti's credibility absent the errors. *See Xiao Ji Chen v. U.S. Dept. of Justice*, 434 F.3d 144, 161 (2d Cir.2006).

■ The IJ also determined that some of Xhuti's proffered evidence undermined his claims, including an October 2001 certificate from the Democratic Party that alleged there were "no violation of the free vote" during the June 2001 elections and a medical certificate that lacked sufficient detail. The October 2001 certificate, issued by the Democratic Party of Albania, does in fact state that there was "no violation of the free vote" during the June 2001 elections. However, the certificate also states that Xhuti was present at the elections to ensure a free vote and that, as a result, he was "ill treated by police," "taken by force," and detained for two days. Furthermore, Xhuti testified that, although Socialists came to the polling sites to cause disruption, they threatened and beat only those who were working for the Democratic Party, not the voters. And as a result, the voters were unaffected. Although the IJ correctly cited the certificate with respect to the outcome of the election, she failed to address Xhuti's explanation for the statement made regarding the outcome of the election and the fact that the certificate supported Xhuti's claims of persecution. *See Cao He Lin*, 428 F.3d at 403 (holding that, although an IJ is not required to credit an applicant's explanations even if they "appear plausible on a cold record," he or she must "take

those explanations into account as significant factual assertions supporting [the applicant's] claim" and provide a reasoned evaluation).

■ Regarding the medical certificate, the IJ stated that "[i]t is a vague mention that the respondent came in for curing and that could not (sic) have been for any reason whatsoever." Although the certificate is vague in that it does not provide any details regarding why Xhuti sought medical attention and the nature of his injuries, there is another certificate in the record that does provide detail regarding the June 2001 incident. This medical certificate, which confirms that Xhuti was treated on June 27, 2001, states that Xhuti sustained a wound on his head, that he was given "ambulatory service," and that an examination was given which resulted in no "serious problems." Again, the IJ erroneously concluded that certain evidence undermined Xhuti's claims without discussing the contradictory information that was in the record. *See Cao He Lin*, 428 F.3d at 403.

■ Lastly, the IJ's adverse credibility determination was also based partly on Xhuti's lack of knowledge of the Democratic Party. Although Xhuti did not testify clearly regarding the number of parliamentary seats won by the Socialist Party, demonstrating such knowledge is not necessary for an applicant to establish that he identified with a political party, or was persecuted for his participation in the party. *Cf. Rizal v. Gonzales*, 442 F.3d 84, 90 (2d Cir.2006) (finding that an applicant's inability to demonstrate detailed doctrinal knowledge is an insufficient basis to conclude that he or she did not identify with a particular religion, or was not persecuted for such affiliation). Furthermore, although the IJ questioned Xhuti's membership in the Democratic Party, she again failed to address evidence documenting

that membership, including a certificate issued by the Democratic Party of Albania, confirming Xhuti's membership; a membership booklet for the Youth Forum of the Democratic Party; a membership card for the Association of Anticommunists Politically Persecuted; and a Voter Identity Card, issued by the Central Commission of Elections. Because there is evidence in the record that contradicts the IJ's holding and the IJ failed to discuss such evidence, the IJ's finding that Xhuti's claim of active membership was not credible is also infected by legal error. *See, e.g., Jorge–Tzoc,* 435 F.3d at 150.

Accordingly, for the reasons discussed above, Xhuti's petition is granted with respect to his withholding of removal claim and the case remanded for the IJ to consider his eligibility in light of the entire record.

■ Finally, because Xhuti's CAT claim was also apparently denied because the IJ found his testimony incredible, we vacate and remand for reconsideration of that claim as well. *See, e.g., Shou Yung Guo v. Gonzales,* 463 F.3d 109, 113 (2d Cir.2006).

For the foregoing reasons, the petition for review is DISMISSED, in part, and GRANTED, in part, the BIA's order is VACATED, in part, and the case is REMANDED for further proceedings consistent with this order. Having completed our review, Xhuti's pending motion for a stay of removal is DISMISSED as moot.